THE FARMERS AND MECHANICS' NATIONAL BANK OF BUFFALO, Respondent, *v.* THOMAS ATKINSON, Impleaded, etc., Appellant.

S. & D., correspondents and agents at Buffalo of defendant B., of New York, to fill an order from B., purchased in their own name, a boat load of wheat; they were not furnished by B. with money or credit to make the purchase, and B. knew that they would need to raise the money to pay for the wheat upon the bill of lading thereof. B. was not known to the owner in the sale. Plaintiff, in accordance with a previous arrangement, discounted the draft of S. & D. upon B., upon delivery of a bill of lading of the wheat, which stated that it was shipped to New York on account and order of plaintiff, and with the avails S. & D. paid for the wheat. Upon acceptance of the draft the bill of lading was delivered to B., with a statement stamped thereon, to the effect that the wheat was pledged to plaintiff as security for the payment of the draft, and was put into the possession of B. in trust for that purpose, not to be diverted to any other purpose until the draft was paid. B. accepted the draft, received the bill of lading, received the wheat on its arrival and sold it at the produce exchange to defendant A. In an action for a conversion of the wheat, *held*, that the notice stamped upon the bill of lading wrought no change in the legal relations or rights of the parties; that it did not authorize a sale by B., but only conferred a power to take and hold until the draft was paid; and that, as the bill of lading showed plaintiff to be the owner, and the notice stamped thereon, that the possession of B. was clogged with a plain inhibition against a sale, A. having constructive notice thereof, acquired no title by his purchase.

Also, that if the indorsement on the bill of lading was to be considered a private letter of instruction to B. this did not destroy or lessen its effect as characterizing his possession.

Also, *held*, that the factors's act had no application to such a case.

*Nat. Bank of Commerce* v. *Merchants' Bank* (1 Otto, 92), distinguished.

(Argued June 3, 1878; decided November 12, 1878.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a verdict.

This was an action for the alleged conversion of a boat load of wheat.

The defendant Brown, who was a commission merchant and dealer in produce at New York, sent the firm of Sears & Daw, grain commission merchants, and his correspondents at Buffalo, an order to buy for him a cargo of wheat. Brown furnished no money or credit with which to make the purchase, but the understanding and mode of business was that Sears & Daw should purchase the grain on their own account, procuring the funds by discount of drafts on Brown, secured by transfer of the wheat. On receiving the order Sears & Daw applied to plaintiff for the discount of a draft on Brown for the purchase-price to be secured by a transfer to it of the wheat, to which plaintiff assented. Sears & Daw having purchased the wheat, shipped the same by canal boat to New York, taking therefor a bill of lading, running to :
" Account and order Farmers and Mechanics' National Bank of Buffalo. Notify E. S. Brown, New York." Sears & Daw drew their draft at twenty days on the defendant Brown, and procured the same to be discounted by the plaintiff, and upon such discount delivered to plaintiff the bill of lading and insurance receipt. The proceeds of the discount paid for the wheat. Afterwards, and before sending them forward to New York, the plaintiff caused to be stamped upon the bill of lading a special indorsement as follows :

" *To* E. S. BROWN.

" The property mentioned in this bill of lading with insurance on the same, is pledged to the Farmers and Mechanics' Bank of Buffalo, as security for the payment of the accompanying draft for $7,791.72, and the property is placed in your custody in trust for that purpose, and is not to be diverted to any other use until the draft is paid ; and upon your accepting and paying the draft, the claim of this bank will cease. Without recourse.

"F. SIDWAY,
" *Cashier.*"

And upon the draft was indorsed the following, "the documents hereunto annexed are to be delivered to drawee on acceptance." The draft was also indorsed by the plaintiff for collection, and with the bill of lading and insurance receipt immediately sent forward to a New York bank. The New York bank presented the draft for acceptance to defendant Brown, and upon acceptance delivered to him the bill of lading and insurance receipt. Afterwards, when the wheat arrived in New York, defendant Brown paid the freight and other charges thereon, and received it from the carrier, November tenth. Defendant Brown sold the wheat "on 'Change" to a broker, for defendant Atkinson, who paid for the same without actual notice of any claim on the part of plaintiff. Brown suspended payment before the draft matured.

*Charles Tracy,* for appellant. Plaintiff's right to recover depended upon the notice indorsed by it upon the bill of lading whereby it claimed a continuance of its lien until payment of the acceptance. (*Bk. of Comrce.* v. *Mer. Bk.*, 2 Otto, 92, 97.) A promise to hold goods for the benefit of another does not give a specific lien on the goods themselves, and if the goods or their proceeds are diverted to another use the promise cannot follow them into the hands of third parties. (*Gibson* v. *Stone,* 43 Barb., 285.) As there was nothing in the notice or indorsement of the bill of lading in terms forbidding Brown to sell the wheat he was justified in assuming that he had a right to sell. (*Russell* v. *Wetmore,* 3 N. Y. Leg. Obs., 318; Story on Agency, § 74; *Hoffman* v. *Ætna Ins. Co.,* 32 N. Y., 405, 413; *Blossom* v. *Griffin,* 13 id., 569.) The right plaintiff claimed to have reserved by the indorsement was intended to operate as a mortgage in its favor, and as it was not accompanied by an actual and continued change of possession it was void as against a subsequent *bona fide* purchaser. (S. L. 1833, chap. 279, § 1; 2 Fay's Dig., 86.) Defendant Atkinson was protected by the factor's act, even if the indorsement should be held to control the rights of the parties. (S. L. 1830, chap. 179, § 3;

Fay's Dig., 595; *Gibon* v. *Stanton,* 9 N. Y., 476; *Bailey* v. *H. R. R. Co.,* 49 id., 70; *Patterson* v. *Perry,* 5 Bosw., 518; *Heard* v. *Brewer,* 4 Daly, 136; *Coller* v. *Shepard,* 19 Barb., 305; *Lewis* v. *Mott,* 36 N. Y., 395.)

*Freeman J. Fithian,* for respondent. The points are substantially the same as those in *F. and M. Nat. Bk. of Buffalo* v. *Logan.**

FOLGER, J. The opinion delivered in the case of the same plaintiff against Logan and Preston† covers the general principles upon which this case must rest. There was not as elaborate a trial of this case as of that, and some facts. which there appear, are not given here, or are not as fully developed.

But these important facts are here ; that the wheat was bought by Sears & Daw of the owner of it ; that they were not furnished with money or credit by Brown, to make the purchase ; that Brown was not known to that owner, in the sale ; that Sears & Daw paid for it with money raised by themselves, on the security of the wheat, and on a transfer of the title to it to the plaintiff, the lender of the money ; that the title to the wheat was never transferred by the plaintiff; that the possession of it, which the plaintiff gave to Brown, was restricted by express limitations, which gave no power of sale ; and that it was the agreement of Sears & Daw and the plaintiff, before the discount of the draft by which the money was borrowed, that the bill of lading of the wheat should be made out in favor of the bank.

The inference is too strong to be resisted, drawn from the correspondence of Brown and Sears & Daw, that Brown knew that they would need to raise the money to pay for the wheat ; that they would need to do this upon the security of the wheat ; and that bills of lading, indorsed to or in the name of the lender of the money, would be the means of effecting this. These are the controlling facts of the other case, and they control this.

* *Ante,* p. 570.  † *Ante,* p. 568.

It will be sufficient to notice any points made by the appellant, which did not arise or were not presented in that case.

The appellant, in this case, insists that the right of the plaintiff to recover depends solely upon the effect to be given to the notice indorsed by it upon the bill of lading ; and further urges, that in the absence of that notice, the lien of the plaintiff ceased, upon the acceptance by Brown of the draft on him.

It is thus assumed, that the interest of the plaintiff in the wheat was only that of a lienor. This assumption may, for the present, be conceded. The case of *The National Bank of Commerce* v. *Merchants' Nat. Bank* (1 Otto, 92), is cited. But there exists, in the case in hand, what did not there, viz.: an agreement between the shippers and Brown and the plaintiff that the last named should have the security of the bill of lading for the payment of the draft, until payment was made. The absence of such an agreement is noticed in the case cited ; and it is to be seen, from the course of the opinion there, that had there been one, the learned court would have reached a different conclusion. So that not only is the notice, put by the plaintiff upon the bill of lading here, a matter of much importance, but so also is the agreement of all the parties, which is the spring of the whole transaction. Indeed it must not be lost sight of, that the rights and relations of the parties to this transaction have their root in the primary understanding that the wheat was to be the security for the payment of the draft, and was to be held by the plaintiff therefor.

There was then, when the plaintiff put the notice upon the bill of lading, no change by it of the legal relations or rights of the parties. That notice did not express more than the agreement of the parties, and, if followed, would have done no more than to preserve them.

Besides that, the bills of lading, in the case cited, do not appear to have been to the account of the bank which discounted the draft ; but as we infer, to the order of the ship-

pers, and indorsed to the brokers, or running directly to the brokers by name. This is also an important difference.

It is claimed, that the notice to Brown, stamped upon the bill of lading, accompanied by the possession of the wheat given to him by the plaintiff, conferred upon him the power to sell it.

The argument is ingenious, but not convincing. It is as follows : The wheat was placed in his hands, in trust, as security for the payment of the draft, and not to be diverted to any other purpose, until the draft was paid. The draft was payable in money, and the wheat had necessarily to be converted into money, before the draft could be paid.

The weak place in this reasoning is the assertion that the wheat had to be converted into money, before the draft could be paid. There was money in the financial circles of New York which could have been got, without a sale of this wheat, and payment made of the draft. The authority to Brown is to take the wheat and to hold it ; not to sell it and hold the avails of it. It is the wheat that is to be security for the payment of the draft, not the money arising from a sale of it. It is the wheat that he is forbidden to divert to any other use. In short, the plain meaning of the notice is that the wheat is to remain intact, until the draft is paid. There was no power to sell conferred, only to take and hold.

The only *indicia* of ownership, given to Brown, were possession, and the bill of lading showing the plaintiff to be the consignee and owner and further guarded by a special notification which clogged the possession by him with a plain inhibition against sale or disposition of it. And the fact that the bill of lading, running to the plaintiff as consignee, was unindorsed by it, was itself a notice to all the world that the property was in it. Whether the matter stamped upon it was as a private letter of instructions to Brown or not, did not do away with the effect of that fact. It certainly did not lessen the effect of it. As we have shown, it characterized his possession of the wheat, and indicated to any reader of it that his power over it was limited, merely to hold in

Opinion of the Court, per FOLGER, J.

trust, as security, until the draft was paid. And the letters which passed between Brown and Sears & Daw, though they may relieve him of intentional wrong, do not affect his legal relation to the plaintiff. So that there was no question for the jury of the good faith of Brown, nor question of authority arising from former transactions. There was nothing in the former transactions, as proved, and of the plaintiff's knowledge of them, which showed it cognizant of prior action by Brown like his in this case.

That the factors' act has no application to such a case as this, is well shown in *Bank of Toledo* v. *Shaw* (61 N. Y., 283.)

The judgment should be affirmed.

All concur, RAPALLO, J., on authority of *The Farmers and Mechanics' National Bank of Buffalo* v. *Logan.*\*

Judgment affirmed.

---

\* *Ante,* p. 568.

# MEMORANDA

OF

CAUSES DECIDED DURING THE PERIOD EMBRACED IN THIS VOLUME WHICH ARE NOT REPORTED IN FULL.

